UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Umbach Medical Group, PLLC, et al.,<br><br>        Plaintiffs<br><br>    v.<br><br>Elevance Health Inc., et al.,<br><br>        Defendants | Case No. 2:23-cv-02159-CDS-MDC<br><br>**Order Denying Defendant's<br>Motion to Dismiss**<br><br>[ECF No. 14] |

Umbach Medical Group PLLC dba Blossom Medical Group, Thomas Umbach MD PC dba Blossom, Umbach Medical Associates PLLC, Umbach Group Practice PLLC, Umbach and Associates PLLC, Warm Springs Surgical Center LLC, and Umbach Surgical Group PLLC dba Warm Springs Anesthesia (collectively, plaintiffs) bring this action to recover unpaid benefits from defendants Elevance Health, Inc. and Rocky Mountain Hospital and Medical Service, Inc. dba Anthem Blue Cross and Blue Shield (collectively, defendants). Defendants move to dismiss plaintiffs amended complaint (ECF No. 13) under Rule 12(b)(6) for failure to state a claim upon which relief can be granted (ECF No. 14). The motion is fully briefed. ECF No. 15; ECF No. 16. For the reasons herein, I deny the defendants' motion, order limited discovery, and stay this case pending the completion of the ordered discovery period and settlement conference.

**I.      Background**

Defendants provide group health plans as a basis for insurance coverage. Am. compl., ECF No. 13 at ¶ 1. Group health plans are contracts between defendants and patients; the group health plan outlines the terms of insurance provided to patients. *Id*. at ¶ 18. Plaintiffs are surgeons, registered nurses, anesthesiologists, dieticians, and other clinicians who work together as Blossom Bariatrics and Warm Springs Surgical Center where they have performed hundreds of surgeries on patients in Las Vegas, Nevada, who were insured under defendants' group health plans. *Id*. at ¶¶ 1, 17, 22.

Plaintiffs have not contracted directly with National Blue Cross Blue Shield, making plaintiffs out-of-network providers for the patients with defendants' group health plan insurance coverage. *Id.* at ¶ 20. Accordingly, National Blue Cross Blue Shield is not contractually required to make direct payments to plaintiffs. *Id.* at ¶ 27.

Plaintiffs required their patients to sign an "Assignment of Insurance Payment agreements" (the "Exemplar Assignment"). *Id.* at ¶ 29. The Exemplar Assignment states that plaintiffs bill patient's insurance companies "as a courtesy for all in network and out of network policies." Exemplar Assignment, Pls.' Ex. A, ECF No. 15-1 at 2. It further states that insurance companies occasionally send payment directly to the patient instead of the provider, and if the patient receives the payment, they should forward the payment to plaintiffs. *Id.* By signing the agreement, patients agree to "assign to [plaintiffs] any and all sums of money which [the patient] received to date or which [the patient] may receive in the future from [their] health insurance company." *Id.* They also agree to "authorize [plaintiffs] to file appeals, reconsiderations, grievances, and complaints regarding the payment of all said claims" and "grant permission to [plaintiffs] the right to pursue [the patient's] insurer legally if necessary." *Id.*

Plaintiffs allege that despite knowledge of the assignments, defendants have refused to pay over 30,000 claims for out-of-network medical charges or sent payments to the patients directly in violation of NRS 689A.135. *Id.* at ¶¶ 39, 44–48. Plaintiffs filed this action against defendants asserting claims for (1) breach of contract, (2) intentional interference with contracts; and (3) declaratory relief under Nevada Revised Statute (NRS) 689A.135. ECF No. 13 at ¶¶ 49–74. Plaintiffs seek to: (1) recover payments made by defendants directly to the patients (double payment of benefits under NRS 689A.135); and (2) recover unpaid benefits. *See generally id.*

## II.      Legal standard

The Federal Rules of Civil Procedure require a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal is appropriate under Rule 12(b)(6) when a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Under Rule 15(a), a court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive of the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178 (1962).

II.     Discussion

     A.  NRS 689A.135

Nevada Revised Statute 689A.135 permits patients to assign their health insurance payments to health care providers and has provisions to ensure that medical providers are paid by health insurers for services they provide patients, despite the prevalence of anti-assignment provisions in group health insurance plans. *See* Nev. Rev. Stat. § 689A.135(1). That statute provides that:

> [a] person insured under a policy of health insurance may assign his or her right to benefits to the provider of health care who provided the services covered by the policy. The insurer shall pay all or the part of the benefits assigned by the insured to the person designated by the insured. A payment made pursuant to this subsection discharges the insurer's obligation to pay those benefits.

*Id*. The statute also punishes health insurers who ignore or violate patients' assignment of payment to their medical providers by paying patients directly:

> If the insured makes an assignment under this section, but the insurer after receiving a copy of the assignment pays the benefits to the insured, the insurer shall also pay those benefits to the provider of health care who received the assignment as soon as the insurer receives notice of the incorrect payment.

*Id.*

Defendants argue that I should dismiss plaintiffs' breach of contract and declaratory relief claims with prejudice because NRS 689A.135 does not apply because plaintiffs, as professional limited liability companies, professional corporations, and limited liability corporations, do not fall within the enumerated list of "providers of health care" set forth in NRS 689A.135. Defs.' mot. to dismiss, ECF No. 14 at 6. Indeed, NRS 689A.135 applies to providers of health care,[1] which are defined in an exhaustive list in NRS 689A.135(3). *See Clark Cnty. Off. of Coroner/Med. Exam'r v. Las Vegas Rev.-J.*, 458 P.3d 1048, 1057 (Nev. 2020). A cursory review of the exhaustive list indicates that defendants are correct—plaintiffs are not considered providers of

---

[1] Nev. Rev. Stat. § 689A.135(1) states, in part: "A person insured under a policy of health insurance may assign his or her right to benefits to the provider of health care who provided the services covered by the policy."

4

healthcare under NRS 689A.135(3). And in their response, plaintiffs did not deny, and thus concede,[2] that they are not considered a provider of healthcare under NRS 689A.135(3), so NRS 689A.135 does not apply to them.

Defendants also argue that I should dismiss plaintiffs' breach of contract and declaratory relief claims with prejudice because NRS 689A.135 does not apply to the group health plan. ECF No. 14 at 7. Defendants are correct in their assessment of the statute; NRS 689A.020(2) limits the scope of NRS 689A to exclude any group or blanket policy. *See* NRS 689A.020(2). And plaintiffs' response failed to address whether the statute applies to the group health plans, so plaintiffs also concede that NRS 689A.135 does not apply to the group health plans.

Because NRS 689A.135 does not apply to plaintiffs or the group health plans, plaintiffs are not entitled to double payment of benefits under the statute. However, plaintiffs argue that their claims are not dependent on NRS § 689A.135, and to the extent the statute is referenced, it is only for the direct payments to patients, which is a small portion of the claims. ECF No. 15 at 13. Therefore, to the extent plaintiffs' breach of contract and declaratory relief claims rely on NRS 689A.135, they are dismissed with prejudice. However, this does not conclude the court's inquiry into either claim.

**B. Right to sue for declaratory relief under the Exemplar Assignment**

The Exemplar Assignment is titled "Assignment of Insurance Payments." ECF No. 15-1 at 2. It assigns "any and all sums of money" patients receive from their health insurance company and authorizes an insurance company "to pay all sums which it has paid or would pay to [the patient] directly to" plaintiffs. *Id.* The Ninth Circuit has held that an assignment agreement does not assign rights unless it is made clear from its terms that the parties intended to assign those

---

[2] When opposition to a motion to dismiss failed to address arguments in the motion to dismiss, the plaintiff effectively abandoned the claim to relief. *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006). Additionally, Local Rule 7-2(d) provides, in relevant part, that "[t]he failure of a moving party to file points and authorities in support of the motion constitutes a consent to the denial of the motion." LR 7-2(d).

rights. ECF No. 14 at 7 (citing *DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868, 876–78 (9th Cir. 2017)). It is generally understood that "assignment of the right to benefits generally includes the right to sue for nonpayment of benefits." *S. Coast Specialty Surgery Ctr., Inc. v. Blue Cross of Cal.*, 90 F.4th 953, 960 (9th Cir. 2024) (citing *DB Healthcare*, 852 F.3d at 876–77). The Ninth Circuit has previously held that if the assignment form does not encompass assignment of equitable claims, a plaintiff is barred from bringing those claims. *DaVita, Inc. v. Amy's Kitchen, Inc.*, 981 F.3d 664, 678 (9th Cir. 2020) (*DaVita I*). However, at least one court has found an exception to this rule. *See Prime Healthcare Servs.-Reno, LLC v. Hometown Health Providers Ins. Co.*, 2022 U.S. Dist. LEXIS 94638, at *5 (D. Nev. May 26, 2022). The *Prime Healthcare* court explained that the circumstances were distinguishable from *DaVita* because "the assignee in *DaVita* specifically sought injunctive and equitable relief 'to address the allegedly illegal plan terms, including reformation to conform the plan to the requirements of federal law[,]'" but the *Prime Healthcare* plaintiff only alleged that the defendant "violated its own benefit plans by failing to pay or underpaying [the plaintiff], and [the plaintiff] is seeking recovery, through equitable claims, of the benefits owed." *Id.* (quoting *DaVita, Inc. v. Amy's Kitchen, Inc.*, 379 F. Supp. 3d 960, 965 (N.D. Cal. 2019) (*DaVita II*) *aff'd* 981 F.3d 664 (9th Cir. 2020)).

      The defendants argue that *Prime Healthcare*'s holding is inconsistent with *DaVita I* and *DB Healthcare* and therefore plaintiffs' equitable claim for declaratory judgment should be dismissed. ECF No. 16 at 4–5. In the alternative, they argue that "Plaintiffs' declaratory relief claim is more similar to that in *DaVita* than that in *Prime Healthcare*, since it seeks a declaration that Anthem's payments to the Patients was contrary to law." *Id.* at 5.

      Based on the information before the court at this time, I disagree with both of defendants' contentions. First, I do not find the holdings in *DaVita I* and *DB Healthcare* are inconsistent with *Prime Healthcare*. As a threshold matter, the type of relief sought in the former two cases is distinguishable from the relief sought in the latter. In the *Davita* litigation, the plaintiff sought "injunctive and other equitable relief under 29 U.S.C. § 1132(a)(3) of ERISA to

address allegedly illegal plan terms, including reformation to conform the plan to the requirements of federal law, as well as attorneys' fees." *Davita II*, 379 F. Supp. 3d at 965. In *DB Healthcare*, the plaintiff sought "injunctive relief to prevent Anthem from offsetting asserted overpayments against other payments due the [plaintiff] . . . ; declaratory relief that [defendant]'s recoupment efforts are unlawful; monetary damages for benefits allegedly unlawfully recouped; and declaratory and injunctive relief for breach of fiduciary duty." 852 F.3d at 876–77. Although *DB Healthcare* did address standing to bring assigned claims, those claims were also tied to ERISA plans that specifically enumerated which categories of individuals and entities may enforce each of the statute's protections. *Id.* The general rule developed in *DB Healthcare* and *Davita I* that an assignment of rights agreement, unless specifically stating otherwise, only confers the right to sue for nonpayment, still holds true. Faced with a much narrower request for equitable relief, directly connected to the nonpayment—rather than addressing the lawfulness of parts of the agreement, or seeking reformation of the plan—*Prime Healthcare* found a logical exception to this general rule. As to the defendants' second contention, as discussed further herein, without the contract between the defendants and the assignees available to the court for consideration, it is unclear how this declaratory relief claim compares to those in *DB Healthcare*, the *Davita* litigation, or *Prime Healthcare*.

### C.  Need for discovery as to claims one and three

Based on the briefing, I see two issues that defendants improperly attempt to wield as both sword and shield to argue for dismissal of the plaintiffs' first and third claims. First, defendants seek dismissal of plaintiffs' breach of contract claim by arguing that plaintiffs have not identified which terms were breached in the contracts between the defendants and the plaintiffs' patients. ECF No. 14 at 8. They state that "plaintiffs admit they have not seen any of the insurance contracts upon which they base their breach of contract claim and do not know what they require[.]" *Id.* Where the defendants refuse to elaborate on is that they currently possess, or should possess, those patient contracts. Those contracts were presumably signed

between the defendants and the patients. As the plaintiffs explain in their response, they estimate roughly "that there are 30 times more unpaid claims compared to direct payment claims." ECF No. 15 at 5. This number is speculative, but I find that the plaintiffs have met the plausibility pleading standard to suggest that at least *some* of the claims are unpaid, and that not all 30,000 claims were made as direct payments to patients. I find it difficult to imagine that the contracts between the insurer and the patients do not—in some form or other—discuss right to payment. Payment is at the heart of plaintiffs' claims as they allege payment has been appropriately assigned to them. Therefore, at this juncture of proceedings, the language of the contracts is of significance to this dispute, and I find that, even though the plaintiffs have provided little information on which to ground their complaint, their claim is plausible, and they are therefore entitled to limited discovery as to the insurer-patient contracts relevant to the 30,000 claims. *See, e.g., Giordano v. Pub. Serv. Co. of N.H.*, 2020 WL 2404885, at *4 n.4 (D.N.H. May 12, 2020) ("Where relevant facts necessary to support a claim are in the hands of the defendant, the court may, sua sponte, order limited discovery.") It would be against the interests of justice to allow the defendants to argue that the plaintiffs—who were not parties to the contracts but who were assigned at least some of the rights of one of the contract parties—cannot pursue claims because they do not know what the contracts say. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (Courts are vested with inherent powers that are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)); *see also Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1028 (9th Cir. 2017) (information that could only be obtained through discovery need not be included in a complaint); *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012) ("[S]ome latitude may be appropriate where a plausible claim may be indicated based on what is known, at least where some of the information needed may be in control of [the] defendants." (internal quotations removed)).

Second, because I have found that NRS 689A.135 is inapplicable and double payment is not appropriate, understanding which claims resulted in patients receiving direct payments and which claims resulted in nonpayment may be an essential distinction. If, as the defendants imply,[3] all the 30,000 claims were addressed as direct payments to patients, then there is no reason to further consider claims one and three to the extent they are based on NRS 689A.135. However, if at least some of those 30,000 claims have not been paid at all—as the plaintiffs allege—then the breach of contract and declaratory judgment claims regarding those unpaid claims, which are not premised on NRS 689A.135 and would not involve double payment, can and should be analyzed independently. Given that the defendants should have ready access to information related to whom they dispersed money, I find that limited discovery here is warranted. *See, e.g.*, *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730 (5th Cir. 2018) ("when discoverable information is in the control and possession of a defendant, it is not necessarily the plaintiff's responsibility to provide that information in her complaint); *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) ("The *Twombly* plausibility standard, which applies to all civil actions does not prevent a plaintiff from 'pleading facts alleged upon information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." (citations omitted)).

Therefore, the defendants are ordered to produce to plaintiffs within sixty days of this order (1) the contracts signed between the defendants and the patients and (2) an accounting of which claims were paid directly to patients, and which were not. After the production of this limited discovery, the parties must attend a settlement conference with the assigned magistrate judge. Should settlement fail, the parties have fourteen days to file a revised discovery and scheduling plan. Aside from the limited discovery as set forth in this order, this case as to claims

---

[3] By arguing that plaintiffs' entire breach of contract and declaratory relief actions are premised on Nev. Rev. Stat. § 689A.135, the defendants imply that plaintiffs' claims are primarily for double payment.

one and three is hereby stayed until fourteen days after the conclusion of the settlement conference.

### D. Need for discovery as to claim two

Unlike the contract and declaratory relief claims, which are reliant, at least partially, on the insurance contracts between the defendants and the patients, the plaintiffs' second claim involves only the assignment agreements that both parties possess and have produced to the court in the form of the Exemplar Assignment. However, this claim also cannot be resolved until the limited discovery is completed.

In Nevada, the required elements for a claim of intentional interference with contractual relations are: "(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; (5) resulting damage." *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003). The defendants argue that the plaintiffs' amended complaint fails to sufficiently allege that their conduct was intentional under prong three and that there was an actual disruption of the contract under prong four. Their "actual disruption" argument is essentially that, because the contracts anticipated an insurance company's payment directly to patients, their payment directly to the patients resulted in no disruption to the contract. ECF No. 14 at 9–10. The defendants separately argue that they were privileged to pay patients directly. *Id.* at 10–11. I find that, once again, the number of claims that are unpaid, rather than paid out directly to patients, is essential information to this question. As the plaintiffs argue, a major component of their second claim rests on the failure to pay question rather than the double payment question. I find that the previously discussed limited discovery is therefore necessary to address this claim as well. I will defer ruling on the intentional interference question, both as it relates to unpaid claims and claims paid directly to patients, until the limited discovery has been produced so the parties can differentiate and argue clearly about each.

III.     Conclusion

IT IS THEREFORE ORDERED that the defendants' motion to dismiss **[ECF No. 14] is denied.** The defendants are ordered to produce for the plaintiffs (1) the contracts signed between the defendants and the patients and (2) an accounting of which of the 30,000 listed claims were paid directly to patients, and which were not. The defendants will until December 2, 2024, in which to turn this information over. The parties must then attend a settlement conference with the magistrate judge. Should it fail, the parties have fourteen days to provide the court a briefing schedule. Aside from the limited discovery, this case as to claims one and three is hereby stayed until fourteen days after the conclusion of the settlement conference. I defer ruling on claim two until the limited discovery is completed.

Dated: September 30, 2024

_____
Cristina D. Silva
United States District Judge